**Commonwealth v. Muscati**

*J. Michael Eakin, Assistant District Attorney,* for Commonwealth.
*Jon C. Botula,* for defendant.

SHUGHART, *P. J.,* May 27, 1977—Defendant is charged with escape from the State Correctional

Institution at Camp Hill under the Crimes Code of December 6, 1972, P. L. 1482, 18 C. P. S. A. §5121(a). He waived trial by jury and the applicable facts of the case were placed of record by stipulation. His sole contention is that the statute is not applicable to the stipulated facts. The facts are as follows:

Defendant was given a furlough from the State Correctional Institution at Camp Hill to visit relatives in Coreopolis. He was to leave on February 14, 1977, and to return on February 18, 1977. One of the conditions of the furlough was that he was not to leave the State. On February 15, 1977, defendant was picked up by Rhode Island authorities while en route to his parents' home in Massachussetts within the time his furlough was in effect. He is charged with escape on the basis of his deviation from the condition of the furlough. The apprehension resulted from a routine check and no charges were filed against him in Rhode Island. Section 5121(a) of the Crimes Code reads:

"A person commits an offense if he unlawfully removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period."

It is defendant's contention that the above statute applies only to an inmate who fails to return from temporary leave and, as such, does not cover the breach of another condition within the time period of the furlough. While it is true the courts have applied the statute in such a manner: Commonwealth v. Bey, 221 Pa. Superior Ct. 405, 292 A.2d 519 (1972); Commonwealth v.

Scates, 63 D. & C. 2d 132 (1972), the question presented here is one of first impression in Pennsylvania, so our decision requires the ascertainment of the legislative intent of the statute. Section 105 of the Crimes Code gives the appropriate principles of construction:

"The provisions of this title shall be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this title and the special purposes of the particular provisions involved. The discretionary powers conferred by this title shall be exercised in accordance with the criteria stated in this title and, insofar as such criteria are not decisive, to further the general purposes stated in this title."

The special purpose of this statute is exemplified in the definition of "official detention":

"As used in this section the phrase 'official detention' means arrest, detention in any facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes; but the phrase does not include supervision of probation or parole, or constraint incidental to release on bail." section 5121(e) of the Crimes Code.

Taken together, the Crimes Code provides only for those inmates who fail to return from furlough, or otherwise remove themselves from official detention; nothing is said about deviations from any other provisions in the furlough agreement. If the legislature had wanted to encompass other viola-

tions of the furlough as an offense, appropriate language could easily have been included in the body of the statute or in its definitional counterparts. It would be illogical to assume that the legislature made failure to return from temporary leave a specific offense, but intended to include other breaches of furlough conditions in the general definition of escape. Additionally, it would be inconsistent with the general purpose of the title, as stated in section 104(4) of the Crimes Code, "To give fair warning of the nature of the conduct declared to constitute an offense, and of the sentences that may be imposed on conviction of an offense." Under the present wording of the statute, defendant would not have "fair warning" that the breach of any other condition of the furlough agreement would result in a crime punishable as a felony. Although we have been given broad powers of interpretation by the legislature, we cannot rewrite the statute to include offenses for which there is no evidence of legislative intent. That role belongs to the legislature. Since defendant's conduct, while within the furlough period, does not constitute an escape under the statute, he cannot be held for attempted escape. There is no reason to suppose that because defendant left the State to visit his parents, and thus breached one of the conditions of his furlough, it was also his intent to ignore all of the other terms as well. There has been no showing of the specific intent required to convict one for criminal attempt, and that is an essential element under § 901(a) of the Crimes Code.

The Commonwealth argues that unless defendant's conduct is deemed an escape, prison officials

as well as authorities in custody of an inmate found to be in violation of his furlough agreement would be placed at a disadvantage in controlling inmates on temporary leave. This argument must be rejected. The authorities who apprehend an inmate in a place not designated in his furlough agreement have only one choice; namely, to effect return to the proper prison officials. Whether or not the inmate's behavior is later labeled as escape will have no bearing on this aspect of law enforcement. The only effect of this holding will be on the formal charges placed against the inmate. In this instance, defendant cannot be charged with escape, but there are other sanctions available to prison officials. The Act of July 16, 1968, P. L. 351, as amended December 2, 1970, P. L. 832, 61 P. S. § 1053, authorizes prison officials to administer the necessary disciplinary measures, including revocation of future furlough privileges whenever the inmate is found to have violated the agreement. This holding will not give an inmate on furlough, and in the process of escape, a headstart over the authorities. As stated before, the only effect of this holding is on the formal charges to be placed against the inmate after he is apprehended in violation of the terms of his furlough agreement.

## ORDER

And now, May 27, 1977, for the reasons set forth in the opinion filed this date, defendant is found not guilty; all costs to be paid by Beaver County, the county from which defendant was committed to the State Correctional Institution at Camp Hill.